954 F.2d 733
 NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
XYTEC PLASTICS, INC., Plaintiff-Appellee,
v.
ROPAK CORPORATION, Defendant-Appellant.
 No. 91-1206.
 United States Court of Appeals, Federal Circuit.
 Jan. 8, 1992.
Rehearing Denied Feb. 18, 1992.
 
 Before ARCHER, MICHEL and PLAGER, Circuit Judges.
 
 
 1
 MICHEL Circuit Judge.
 
 
 2
 Xytec Plastics, Inc. is the owner of U.S. Patent No. 4,674,647 (the '647 patent), which is directed to collapsible containers used mostly in the auto assembly business. Ropak Corporation appeals from the order of the United States District Court for the Eastern District of Michigan, Southern Division, preliminarily enjoining Ropak from infringing the '647 patent. Xytec Plastics, Inc. v. Ropak Corporation, Civil Action No. 90-CV-72707 (Feb. 15, 1991). Because Ropak has not shown that the trial court abused its discretion in granting the preliminary injunction, we affirm.
 
 BACKGROUND
 
 3
 Xytec and Ropak manufacture and distribute competing collapsible storage containers. Ropak entered the collapsible container market in May, 1989, through its acquisition, as to all assets relevant to making such containers, of J.I.T. Corporation. At the time of the purchase, Ropak was aware of the Settlement and License Agreement ("Agreement") and related Consent Judgment entered in July, 1988, in an infringement suit between J.I.T. and Xytec. Under the Consent Judgment, J.I.T. acknowledged the validity of the '647 patent and infringement by J.I.T.'s Model 4000 container. But the Agreement gave J.I.T. a license to manufacture containers within the scope of the claims of the '647 patent. When Ropak acquired J.I.T., J.I.T. had terminated the Agreement with Xytec, alleging that its modifications to the Model 4000 container[1] avoided infringement of the '647 patent. The Consent Judgment, however, remained.
 
 
 4
 Later, Ropak further modified the Model 4000 container, and the parties have designated the twice-modified container as the Model 4000 Series II(B) container. Ropak also manufactured and distributed a "delta" container.
 
 
 5
 Xytec commenced the underlying action against Ropak in September, 1990, and thereafter moved for a preliminary injunction. After a three-day hearing, the district court found that Xytec had established a reasonable likelihood of success on the merits, irreparable harm, a balance of hardships in its favor, and that the preliminary injunction is in the public interest. See Hybritech Inc. v. Abbott Laboratories, 849 F.2d 1446, 1451, 7 USPQ2d 1191, 1195 (Fed.Cir.1988). Thus, the lower court granted Xytec's motion,[2] but on February 26, 1991, stayed the preliminary injunction pending the present appeal.
 
 
 6
 We have and exercise jurisdiction pursuant to 28 U.S.C. §§ 1292(c)(1), 1295(a)(1), and 1338 (1988).
 
 DISCUSSION
 
 7
 We will not disturb a preliminary injunction on appeal unless the district court has "abused its discretion, committed an error of law, or seriously misjudged the evidence." Smith Int'l, Inc. v. Hughes Tool Co., 718 F.2d 1573, 1579, 219 USPQ 686, 691 (Fed.Cir.) (citing Eli Lilly & Co. v. Premo Pharmaceutical Labs, 630 F.2d 120, 136, 207 USPQ 719, 734-35 (3d Cir.1990)), cert. denied, 464 U.S. 996, 220 USPQ 385 (1983). None of the four traditional factors concerning preliminary injunctions is dispositive. Instead, we must examine the record to see if the district court committed reversible error in its net evaluation of all the Hybritech factors. See Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc., 908 F.2d 951, 953, 15 USPQ2d 1469, 1471 (Fed.Cir.1990); Hybritech, 849 F.2d at 1451, 7 USPQ2d at 1195 ("[T]he district court must weigh and measure each factor against the other factors and against the form and magnitude of the relief requested.") (footnote omitted).
 
 I. Likelihood of Success on the Merits
 
 8
 Both in its principal brief and in its reply brief, Ropak dwells on alleged shortcomings of the lower court opinion, including the district judge's failure to refer to the specification or prosecution history in interpreting the claim,[3] Appellant's br. at 16, and its failure to discuss the prior art in establishing the permissible scope of equivalents, id. at 17, 20, Reply br. at 9. Indeed, Ropak entitles a portion of its reply brief, "V. EVEN IF THE DISTRICT COURT IS DEEMED TO HAVE ATTEMPTED A LITERAL INFRINGEMENT ANALYSIS, ITS OPINION SHOULD BE REVERSED." Reply br. at ii, 20 (emphasis added). Finally, at oral argument, counsel for Ropak conceded that there was enough evidence in the record before the district court for it to find that Xytec would likely prevail at trial on the question of infringement.[4] The only error with respect to this issue that appellant argues is the lower court's failure to discuss the prosecution history and prior art explicitly.
 
 
 9
 In all of these ways, the appellant has ignored our oft-repeated position that "[w]e sit to review judgments, not opinions." E.g., Stratoflex, Inc. v. Aeroquip Corp., 713 F.2d 1530, 1540, 218 USPQ 871, 880 (Fed.Cir.1983). Although faulty reasoning may lead to an incorrect result, an appellant must show not only faulty reasoning but also an incorrect result. Union Carbide Corp. v. American Can Co., 724 F.2d 1567, 1573-74, 220 USPQ 584, 589-90 (Fed.Cir.1984). We review judgments and orders, not the particular language with which the trial court chose to express itself.
 
 
 10
 Applying this principle to the instant case, appellant fails to explain both why the district court finding of Xytec's likelihood of success on the infringement issue was error and how such error led to an incorrect result, i.e., the issuance of a preliminary injunction. Appellant concedes, and we have no reason to conclude otherwise, that there was enough evidence before the district court to support its finding. By itself, the basis of prediction the lower court relies on to make the finding that Xytec will likely succeed on the infringement issue at trial cannot constitute reversible error where the evidence is sufficient. Nor is there any indication of an abuse of discretion in the district court's evaluation of the record evidence as to infringement compared to the evidence on the other Hybritech factors.
 
 
 11
 Similarly, we discern no legal error in the district court's interpretation of the scope of claim 12 and no clear error in its application of the doctrine of equivalents.[5] An accused product may infringe a patent claim under the doctrine of equivalents if it "performs substantially the same overall function or work, in substantially the same way, to obtain substantially the same overall result as the claimed invention." Pennwalt Corp. v. Durand-Wayland, Inc., 833 F.2d 931, 934, 4 USPQ2d 1737, 1739 (Fed.Cir.1987) (in banc ), cert. denied, 485 U.S. 961 (1988). The purpose of the doctrine of equivalents is to allow a finding of infringement where the accused product does not literally meet every limitation of a patent claim but does contain the legal equivalent thereof. Such a finding is a factual determination reviewable for clear error. Insta-Foam Prods., Inc. v. Universal Foam Sys., Inc., 906 F.2d 698, 702, 15 USPQ2d 1295, 1297 (Fed.Cir.) (citations omitted), reh'g denied, 1990 U.S.App. LEXIS 15190 (Fed.Cir.1990).
 
 
 12
 Ropak contends that the district court did not find every element of the claim or its substantial equivalent in appellant's containers. In particular, Ropak points to the absence of the "flange extending along the side edge" and "means on said mating engagement means preventing relative longitudinal movement of the respective edges" in the accused containers. Appellant's br. at 28. With respect to the 4000 Series II containers, the district court found that the "flange construction at the corners" was the only difference from the container disclosed in the '647 patent but that the various flanges performed "the exact same function" and have similar engagement structures. Order at 7-8. Turning to the delta container, it found "the minor differences in the design are inconsequential" and specifically that the engagement means are "fully functional equivalents" to those disclosed in the '647 patent. Order at 8. Thus, for purposes of the preliminary injunction motion, the court found Ropak's containers infringe the '647 patent under the doctrine of equivalents because "the 4000 Series II bins and the Delta bin incorporate features which function in substantially the same way to produce a result that is identical to the claims of the 647 patent." Order at 13. Although the court did not address the issue of preventing longitudinal motion, given the record, the finding is not clear error.
 
 
 13
 Ropak also argues that the lower court neglected to consider the prior art in construing the permissible range of equivalents. But Ropak fails to show that the court actually failed to examine the prior art. Nor is the import of the prior art so clear as to compel us to infer that the district court neglected to consider the prior art at all in its analysis of infringement under the doctrine of equivalents.
 
 
 14
 Another factor indicating Xytec's likelihood of success on the infringement issue is the Consent Judgment. Referring to the Consent Judgment, the lower court stated, "this Court must recognize the efficacy of its earlier ruling and conclude that Xytec has an excellent chance, albeit rebuttable, of proving patent infringement." Order at 10. Ropak has not argued that this approach is an abuse of discretion or legal error.
 
 
 15
 During appellant's motion for a stay, the lower court commented, "the question of infringement was a close one, but ... the Court believed and continues to believe that Xytec's position was violated by Ropak." Joint App. at 474. Even if the finding of reasonable likelihood of success on the infringement issue is a close call, it is nevertheless well within the range of discretion of the district court as the fact-finder; on the record before us, we cannot say the finding is clearly erroneous.
 
 II. Irreparable Harm
 
 16
 In Smith, we held "that where validity and continuing infringement have been clearly established ... immediate irreparable harm is presumed. To hold otherwise would be contrary to the public policy underlying the patent laws." Smith, 718 F.2d at 1581, 219 USPQ at 692-93 (footnote omitted). We explained the holding in a footnote:
 
 
 17
 Our holding on this issue does not abrogate the traditional requirement of a showing of irreparable harm by one seeking a preliminary injunction.... [T]he trial court should balance the requisite factors. In cases where the showing of validity and infringement is less forceful than it is here, or in cases where equitable or public policy considerations are in favor of the infringer, a movant would have to make a stronger showing of irreparable harm in order to tip the balance of equity in his favor.
 
 
 18
 Id. at n. 7, 219 USPQ at 692 n. 7.
 
 
 19
 On appeal, Ropak argues that the district court committed reversible error by applying the Smith presumption of irreparable harm because Xytec did not make a strong enough showing of validity and infringement. The appellant misconceives the holding of Smith. The language of Smith makes it plain that the degree to which a movant may continue to rely on such a presumption to obtain a preliminary injunction is a function of the strength of its showing with respect to the other three Hybritech factors. Contrary to Ropak's argument, Smith does not stand for the proposition that the irreparable harm presumption never arises absent clearly established validity and continuing infringement. Thus, the mere fact that the lower court applied the presumption is not legal error. Admittedly, the strength of that presumption, and by implication whether to grant a preliminary injunction, must be viewed in light of other Hybritech factors. To the extent the trial court relied on Smith, there is no language in its order to suggest that the irreparable harm presumption, by itself, was dispositive of the motion. Indeed, the court's careful analysis of the proof of infringement under the doctrine of equivalents precludes such an interpretation of its order. Clearly, the presumption was only one factor that the district court weighed.
 
 
 20
 III. Balance of Private Harms and the Public Interest
 
 
 21
 Each party presented evidence of financial harm it may suffer. Xytec also argued compromise of its competitive position as a harm it would suffer without a preliminary injunction. Particularly since Ropak only recently entered the collapsible container market and did so through the acquisition of a proven infringer, Ropak fails to show how the district court seriously misjudged opposing evidence of hardship. Such balancing of hardships is committed to the sound discretion of the district court, and we cannot say its finding was clearly erroneous.
 
 
 22
 Finally, Ropak does not and could not deny that the preliminary injunction serves the public interest if Ropak is infringing a valid patent. In the absence of countervailing evidence and because Ropak is bound by J.I.T.'s concession of validity, the district court did not clearly err in finding the public interest supports granting the motion.
 
 CONCLUSION
 
 23
 The district court did not commit reversible error when it interpreted the patent claim and applied the doctrine of equivalents in finding likelihood of infringement. Moreover, it expressly considered and conscientiously balanced all four Hybritech factors. There is ample evidence in the record to support the district court findings, and it did not otherwise abuse its discretion. Accordingly, the order granting the preliminary injunction motion is affirmed.
 
 
 
 [1]
 Ropak refers to the J.I.T.-modified containers as the Model 4000 Series II(A) and (A') containers
 
 
 [2]
 The preliminary injunction apparently affects only the Model 4000 Series II(B) and delta containers because, according to the appellant, Ropak had discontinued the Model 4000 Series II(A) and (A') by the time of the lower court's order. Our analysis is correspondingly limited
 
 
 [3]
 Claim 12 of the '647 patent reads as follows:
 A container comprising in combination; base means providing a container floor, an opposing pair of side and an opposing pair of end walls, hinge means pivotally connecting said side and end walls to said base means with the side and end walls being pivotal between an upright position and a collapsed folded position disposed over said floor, mating engagement means on the respective adjacent pairs of side edges of said side and end walls for preventing said walls when in their upright position from pivoting outwardly beyond the vertical when engaged, said mating engagement means including for an adjacent pair of said edges presented by a pair of adjacent side and end walls a flange extending along the side edge of the end wall projecting away from the inner face of the end wall and a flange extending along the side edge of the side wall projecting inwardly from the edge of the side wall and in parallel spaced relation to the inner face of the side wall, said flanges interfitting to become engaged with the side and end walls moving from their collapsed to their upright position, and means on said mating engagement means preventing relative longitudinal movement of the respective edges having said flanges when the flanges are engaged.
 
 
 [4]
 Ropak does not challenge the lower court's application of state law holding that the Consent Judgment binds Ropak because of its de facto merger with J.I.T. As a result, Ropak may not litigate the validity of the '647 patent. Thus, we review the district court finding in favor of Xytec of reasonable likelihood of success only as to infringement
 
 
 [5]
 The judge who issued the preliminary injunction also presided over the prior litigation between J.I.T. and Xytec which ended in the entry of the Consent Judgment. Thus, the judge already was familiar with the collapsible container art in general and the Xytec '647 patented container in specific